IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYAN HAMILTON,

        Plaintiff,

v.                                                                                                        CIV 09-0080 KBM/LAM

DONALD ANDERSON and
SALLY ANDERSON,

        Defendants.

# MEMORANDUM OPINION AND ORDER

THIS MATTER came before the Court on Defendants' Motion to Exclude Opinions Offered by Frank Burg *(Doc. 136)*, Defendants' Motion for Summary Judgment *(Doc. 153)*, and Defendants' related Motion to Strike Exhibit "E" *(Doc. 163)* to Plaintiff Bryan Hamilton's response in opposition to the motion for summary judgment. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 4, 14*. Having carefully reviewed the motions, all memoranda and exhibits submitted by the parties, and the relevant authorities, and being otherwise fully advised, I find that Defendants' motions are well-taken and will be granted.

**The Undisputed Evidence**

This cases arises out of personal injuries sustained by Bryan Hamilton on May 31, 2006, after he fell through a skylight on an art sculpture. The art sculpture, measuring approximately 50 feet high, 100 feet long, and 75 feet wide, is known as "the Henge" and has been variously described as a building, a structure, a monument and an enormous sculpture. It was designed by

artist Herbert Goldman and constructed in 1963.  The Henge is located in Roswell, New Mexico, on the property of Defendants Donald and Sally Anderson.  At the time of the incident which forms the basis for this lawsuit, Mr. and Mrs. Anderson were supporters of the "Roswell Artist-in-Residence" program.  Mr. and Mrs. Anderson had extended an invitation to Mollie Oblinger, an artist participating in the program, to use their swimming pool during the summer.

On that fateful May 31, 2006, Mr. and Mrs. Anderson were out of the country.  Oblinger had invited twenty-four year old Bryan Hamilton to accompany her to the Andersons' residence and join her for swimming as he had on two previous occasions.  After swimming and drinking some vodka, Oblinger and Hamilton walked around the property to a grassy area near the Henge.  While Oblinger was seated on the grassy knoll, Hamilton proceeded to preform a "strip tease" by tossing his towel and then spontaneously decided to climb the Henge.  There are no footholds or handholds on the Henge so Hamilton "monkey climbed" up a section of the Henge that measures almost eight feet tall.  Upon reaching the top of a light well, Hamilton observed a chicken wire-reinforced glass skylight.  Hamilton then proceeded to step off of the concrete edge of the light well placing both feet on the glass skylight which quickly gave way under his weight.  He dropped approximately twenty-five or thirty feet to the inside of the sculpture.  Hamilton suffered severe injuries including paralysis.  Hamilton contends that his injuries are due, at least in part, to the negligence of Mr. and Mrs. Anderson.

## Applicable Law

This is a diversity case alleging a negligence cause of action under New Mexico law.  When deciding substantive issues, the role of the federal court therefore, is to simply "ascertain and apply the state law."  *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (internal quotations and citations omitted).  In doing so, the Court must follow the most recent

decisions of the state supreme court.  *Id.*  "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do."  *Id.* at 666.  Although the court may seek guidance from other relevant authorities, its ultimate task is to predict how the state's highest court would rule.  *Id.*  As for procedural questions, such as admissibility of evidence and the standard for summary judgment, federal law governs.  *See Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

## Summary Judgment Standard

Summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury.  *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).  Indeed, summary judgment

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."  . . .  Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Id.* at 325.  Only then does the burden shift to the nonmovant to come forward with admissible evidence showing that there is a genuine

issue of material fact. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

## Defendants' Motion to Exclude Opinions Offered by Frank Burg

### I. Gatekeeper Function - Admissibility of Expert Testimony

The Federal Rules of Evidence, especially Rule 702 governing expert testimony, assign to the trial judge the task of ensuring that the testimony or evidence admitted is both reliable, in that the witness is qualified to testify regarding the subject, and relevant to the task at hand, in that it will assist the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 592-93). Rule 702 further

> "establishes a standard of evidentiary reliability." . . .  It "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." . . .  And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline."

*Kumho Tire Co., LTD. v. Carmichael*, 526 U.S. 137, 149 (1999) (citing *Daubert*, 509 U.S. at 590 & 592).

For an expert's testimony to qualify as reliable under *Daubert*, "an inference or assertion must be derived by the scientific method . . . [and] must be supported by appropriate validation - *i.e.* 'good grounds,' based on what is known." *Dodge*, 328 F.3d at 1222 (citing *Daubert*, 509 U.S. at 590). Although absolute certainty by an expert is not required, an expert's opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as

4

opposed to conjecture or speculation." *Id.* (citing *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)).

The Supreme Court has emphasized that the test of reliability is a flexible one in which the district court may consider the nonexclusive factors mentioned in *Daubert*. *Kumho*, 526 U.S. at 150. These factors include whether a theory or technique: (1) can be and has been tested, (2) has been subjected to peer review and publication, and (3) is generally accepted in the relevant community. *Daubert*, 509 U.S. at 593-94. "Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error . . . and the existence and maintenance of standards controlling the technique's operation." *Id.* at 594 (citations omitted). The above factors are meant to be helpful, not definitive, as much depends on the particular case. *Kumho*, 526 U.S. at 150.

The requirement that "the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue'" goes primarily to relevance. *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citations omitted). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001)).

**II.  The Gatekeeper Analysis Requires Exclusion of Burg's Opinions**

Frank Burg, Plaintiff's expert witness on accident prevention, is expected to testify at trial regarding the alleged risks associated with the Henge, including the purported violation of various codes and regulations. Defendants request that the Court exclude Mr. Burg's opinions relating to alleged building code violations and violations of workplace safety standards,

particularly those promulgated by the Occupational Safety and Health Administration (OSHA), the National Institute for Occupational Safety and Health (NIOSH), and the American National Standards Institute (ANSI), because they are speculative and he offers no support for his proposition that they are applicable to this case.[1]

In his deposition, Mr. Burg stated that the building code violations to which he refers relate to current building codes. *Doc. 136-1, Ex. A* at 12. He further testified that he does not know what building codes were in effect in New Mexico in 1964, the year the Henge was built, or whether the Henge was built to code in 1964. *Id.* at 14. When asked if current building codes are applicable to buildings or structures that were built in 1964, Mr. Burg opined that they may or may not be, but usually they are not. *Id.*

Despite this, Mr. Burg maintains that the Henge should be brought up to current code and relies on two bases for his opinion – his 35 years of experience as a safety professional and the requirements of OSHA. With regards to other violations alleged by Mr. Burg, he testified that they are governed by NIOSH, ANSI, the Building Officials and Code Administrators International Inc. (BOCA)[2], the National Safety Council (NSC)[3], and customs and practices within our society. Mr. Burg admitted in his deposition, however, that many of these standards

---

[1] "Tenth Circuit cases have interpreted *Kumho Tire's* directive that courts must have leeway in applying the *Daubert* framework to mean that although *Daubert* hearings are the most common way to fulfil the gatekeeper function, such a process is not specifically mandated." *Nacchio*, 555 F.3d at 1253-54 (citations and internal quotation marks omitted). The record before the Court is adequate to allow for a proper determination and neither party has requested a hearing. Thus, a hearing on this issue is not necessary.

[2] "Building Officials and Code Administrators International Inc. (BOCA), now known as the International Code Council, publishes codes that establish minium performance requirements for all aspects of the construction industry." IHS, http://aec.ihs.com/collections/boca/ (last visited June 1, 2010).

[3] The National Safety Council is an OSHA alliance program that works to improve health and safety in the general and construction industries and provide the nation's employers and employees with information, guidance, and access to training resources. United States Department of Labor - Occupational Safety & Health Administration, http://www.osha.gov/dcsp/alliances/nsc/nsc.html (last visited June 1, 2010).

are simply recommended practices or standards promulgated by these organizations that he believes should be applicable in this case.

In fact,

> [t]he Occupational Safety and Health Act of 1970 created both NIOSH and the Occupational Safety and Health Administration (OSHA). OSHA is in the U.S. Department of Labor and is responsible for developing and enforcing **workplace** safety and health regulations. NIOSH is part of the Centers for Disease Control and Prevention (CDC) in the Department of Health and Human Services. NIOSH is an agency established to help assure safe and healthful **working conditions** for **working men and women** by providing research, information, education, and training in the field of occupational safety and health.

The National Institute for Occupational Safety and Health, http://www.cdc.gov/niosh/about.html (last visited June 1, 2010) (emphasis added). Moreover, ANSI is an organization that oversees the development and use of norms and guidelines for nearly every sector of **business**. Its mission is "[t]o enhance both the global competitiveness of U.S. business and the U.S. quality of life by promoting and facilitating voluntary consensus standards and conformity assessment systems, and safeguarding their integrity." American National Standards Institute, http://www.ansi.org/about_ansi/overview/overview.aspx?menuid=1 (last visited June 1, 2010).

Indeed, Title 29 of the Code of Federal Regulations contains regulations relating to labor. Standards promulgated by OSHA to promote safe workplaces are found in Part 1910 of Title 29. Section 1910.5 of that Title entitled "Applicability of Standards" specifically states in subsection (a) that "the standards contained in this part shall apply with respect to employments performed in a workplace." Subsection (d) further states, "In the event a standard protects on its face a class of persons larger than employees, the standard shall be applicable under this part only to employees and their employment and places of employment." 29 C.F.R. § 1910.5(d) (2010).

All references throughout the regulations are in regards to an employer/employee relationship.

Even if it was assumed that OSHA regulations generally apply to the Henge, the regulation on which Mr. Burg specifically relies simply does not apply to the facts of this case. He cites to 29 C.F.R. § 1910.23(a)(4) which states: "Protection for floor openings. (4) Every skylight floor opening and hole shall be guarded by a standard skylight screen or a fixed standard railing on all exposed sides." The regulation clearly states that it applies to *floor* openings, including skylights found in floors. Nowhere does it refer to a *roof* skylight as is present in this case. *See Ownby v. Tennessee Farmers Cooperative Corp., U.S.A.*, 2009 WL 1392574, *5 (Tenn. Ct. App. May, 18, 2009).

"Although '[t]rained experts commonly extrapolate from existing data,' neither *Daubert* nor the Federal Rules of Evidence 'require[ ] a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

The Court finds Mr. Burg's opinions speculative and unsupported. Although Mr. Burg admits that current building codes are usually not applicable to buildings or structures built in 1964, he opines without any citation to applicable authority that the Henge, a forty-five year old art sculpture located on private property, should be the exception to the rule. *Doc. 136-1, Ex. A* at 25-26. On their face, all of the other safety regulations and standards relied on by Mr. Burg apply to the employer's duties in the workplace and the construction industry in general. In no manner do they govern the conduct of private landowners with respect to social guests or visitors on their property. 29 C.F.R. § 1910.5(d) (2010); *see also Rigatti v. Reddy*, 723 A.2d 1283, 1287

(N.J. Super Ct. App. Div. Mar. 4, 1999) (OSHA regulations impose duties on the employer, not on owners of property).

Plaintiff attempts to convert the Andersons status as private landowners into employers and their residence into a place of business or a construction site. These attempts are unavailing in relation to this incident. There is no evidence that the Henge was under construction at the time of the accident. The mere fact that Mr. and Mrs. Anderson have a groundskeeper for their private residence, or have at times hired people to maintain or work on their property, does not convert them into employers subject to OSHA, NIOSH, ANSI, BOCA or NSC regulations or guidelines.[4] Moreover, Hamilton was not an employee of Mr. and Mrs. Anderson at the time of the accident and never has been.

Hamilton was simply invited to the Anderson's property by his friend Mollie Oblinger for the purpose of swimming - for his own enjoyment. Hamilton was not working and therefore, was not injured "on the job" or in a "workplace" environment. Simply put, an employer/ employee relationship did not exist between Plaintiff and Defendants. As such, OSHA, NIOSH, ANSI, and any other workplace standards or violations thereof, are not directly applicable nor relevant in this case for creation of a duty under New Mexico law. *See Jones v. McKitterick*, No. 99-1043, 215 F.3d 1337, 2000 WL 668061, *3 (10th Cir. May 23, 2000) (unpublished) (holding that the trial court properly excluded expert testimony on OSHA eye protection regulations because employer/employee relationship did not exist between the plaintiff and the defendant

---

[4] "Employer" as that term is defined by the Occupational Safety and Health Act of 1970 "means a person *engaged in a business affecting commerce* who has employees. . . ." *See* 29 U.S.C. § 652(5).

and therefore, OSHA regulations "should not be considered under [State personal injury] law").[5]

Plaintiff's have failed to show that Mr. Burg's opinions regarding violations of current building codes are based upon sufficient facts or data and have been applied reliably to the facts of this case. Moreover, the Court finds that Mr. Burg's testimony regarding work place standards and violations is entirely inapplicable to this case. Not only would any evidence of violations of OSHA, NIOSH, ANSI or any other work place standards be confusing, misleading, and highly prejudicial, but it would hold the Defendants to a higher standard of care than is required by the applicable state negligence law.

### Defendants' Motion to Strike Plaintiff's Exhibit "E"

In his response to Defendants' motion for summary judgment, Hamilton contends that an article written in 1964 by Bainbridge Bunting, entitled "The Henge," is relevant and admissible on the issues of notice and foreseeability. Defendants request that the Court strike the article, Plaintiff's Exhibit "E," because it is hearsay, contains the author's personal opinions, and is speculative as to its connection to Plaintiff's actions.

This Court previously found the article inadmissible hearsay with regards to Defendant Mollie Oblinger's motion for summary judgment. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Plaintiff again relies on the following portion of the article as demonstrating the foreseeability that someone would attempt to climb the Henge:

---

[5] *State, ex rel. Goodyear Tire & Rubber Co. v. Tracey*, 66 Ohio App.3d 71, 76, 583 N.E.2d 426, 429 (Feb. 7, 1990) ("[W]e cannot imply a civil remedy under OSHA since a third-party private right of action is specifically contrary to the general scheme of restrictions in Section 653(b)(4), Title 29, U.S. Code. OSHA relates only to employers and not to third parties."); *Trowell v. Brunswick Pulp and Paper Co.*, 522 F. Supp. 782, 783-84 (D.S.C. Oct. 1, 1981) (Plaintiff, as an invitee, was not within the class of people OSHA regulations are designed to protect and therefore, evidence of OSHA violation is inadmissible as evidence of a standard of care).

> As the visitor stands before the Henge, a strong impulse directs him to explore it, to scramble up a rising earth mound and enter the moving complexity of the shapes and spaces. . . . After climbing up and over, through and under, down and on to, behind and around, one may possibly discovery somewhere on the Henge's periphery a stone grotto containing an iron-clad door.

*Doc. 159-2* at 12. As I previously ruled, the article sets forth the author's opinions only. Insofar as it is offered for the truth of those opinions – that the structure's design can inspire an observer to think of climbing it – the hearsay objection to the forty-five year old article is sustained.

Hamilton now argues that as to the Andersons, the article is now being offered for some purpose other than its truth – notice. Because the Andersons were aware of the article before the incident at issue, they should be deemed to be on notice that someone might climb the structure. Plaintiff reads the article far too broadly in support of this proposition.

In fact, the article speaks only to an urge to climb the earth mound, not the outside of the structure. In context, the author's words speak of a desire to "enter" the shapes and spaces which are further described as *within* the structure:

> Pushing this [door] aside, one creeps along a crooked dark passageway until he suddenly is plunged into a high, white plastered, light-flooded hall. As a shock comes from the sudden realization that what appeared from the outside to be solid megaliths are in reality hollow forms. Shock soon gives way in a diverting scramble through the strange, hollowed out shapes. One climbs ladders and spiral stairs, tip-toes across slender steel catwalks and stands on transparent glass floors that seem to levitate above well-like caverns.

*Id.* To the extent Plaintiff contends that the 1964 article provided Defendants notice, I find that a reasonable juror could only conclude it gave notice that an observer of the Henge might contemplate exploring the inside of the sculpture, not notice that someone would actually attempt to spontaneously climb its outside walls. Therefore, Defendants' motion to strike is well taken.

11

**Defendants' Motion for Summary Judgment**

Under New Mexico law, in order to recover on a negligence claim, the plaintiff must prove: (1) a duty was owed by the defendant to the plaintiff, (2) the defendant breached that duty, and (3) the breach caused the injuries to the plaintiff. *Herrera v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003). "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." *Id.* (citations omitted). "Negligence is generally a question of fact for the jury. A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant. Whether a duty exists is a question of law for the courts to decide." *Id.* (citing *Schear v. Bd. of County Comm'rs*, 687 P.2d 728, 729 (1984)).

The concept of duty "defines the legal obligations of one party toward another and limits the reach of potential liability." *Calkins v. Cox Estates*, 792 P.2d 36, 39 n.1 (N.M. 1990). Whether or not a duty exists is a policy question determined by legal precedent, statutes, and other principles of law. *Id.* at 39 (citations omitted). With regards to the duty of a landowner to persons on his property, the New Mexico Supreme Court has taken the minority approach in eliminating the distinction between a licensee and an invitee and found that the ordinary principles of negligence govern a landowners conduct as to a licensee and invitee. *See Ford v. Board of County Com'rs*, 879 P.2d 766 , 769 & 771 (N.M. 1994). The standard is one of reasonable care under the circumstances. *Id.* The duty of reasonable care "shall extend to all persons, other than trespassers, who enter property with the defendant's consent, express or implied. . . . In determining reasonable care, the status of the entrant may be considered as a factor, but will no longer be the determinative factor in assessing the landowner's or occupier's liability." *Id.* (citations omitted). Trespassers remain a separate classification to which a lesser

standard of care is imposed. *Id.* The distinction is of no consequence in this case because even as to a duty to invitees or licensees, Defendants did not breach the higher standard of care.

The principle issue is "did the owner (or person responsible) act as a reasonable person in view of the probability of injury to persons entering upon the property. . . . An owner owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor." *Id.* "Duty and foreseeability have been closely integrated concepts in tort law since the court in [*Palsgraf*] stated the issue of foreseeability in terms of duty." *Solon v. WEK Drilling Co., Inc.*, 829 P.2d 645, 648 (N.M. 1992) (citations omitted).

> The determination as to whether a duty exists requires an analysis of both foreseeability and policy. "Foreseeability is what one might objectively and reasonably expect, not merely what might conceivably occur." . . . Even if a plaintiff is a foreseeable party to the defendant's actions, this does not end the inquiry for the imposition of duty. . . . The court must still determine whether the public policy of New Mexico supports an imposition of that duty.

*Ross v. City of Las Cruces*, – P.3d –, 2009 WL 5868558 at * 4 (N.M. App. 2009) (citations omitted). "Foreseeability is a critical and essential component of New Mexico's duty analysis because 'no one is bound to guard against or take measures to avert that which he [or she] would not reasonably anticipate as ***likely*** to happen.'" *Herrera*, 73 P.3d at 190 (citing *Bogart v. Hester*, 347 P.2d 327, 340 (1959) (emphasis added)).

The incident causing Hamilton's injuries simply was not a foreseeable event. No reasonable person could expect, much less conceive that anyone would spontaneously "monkey climb" the exterior of a large art sculpture that has no handholds or footholds. All deposition testimony indicates that no one had ever attempted to scale the exterior of the Henge during its more than forty years of existence, nor had Mr. or Mrs. Anderson ever anticipated that anyone would attempt to do so. Indeed, Plaintiff has come forward with no evidence that anyone ever

did so prior to his undertaking.

Plaintiff relied almost exclusively on Mr. Burg's expert testimony and the article on the Henge, both of which have been excluded, on the issue of foreseeability. The Court finds that there are no material issues of fact in dispute. On the *admissible* evidence now before me, viewed in the light most favorable to Plaintiff, no reasonable person would have foreseen that Plaintiff would spontaneously engage in such an attempt to climb the Henge. The undisputed facts establish that Defendants Donald and Sally Anderson owed no duty to Plaintiff and that they are entitled to judgment as a matter of law in their favor.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

(1) Defendants' Motion to Exclude Opinions Offered by Frank Burg *(Doc. 136)* is **granted**;

(2) Defendants' Motion to Strike Plaintiff's Exhibit "E" to His Response to Defendants' Motion for Summary Judgment *(Doc. 163)* is **granted**;

(3) Defendants' Motion for Summary Judgment *(Doc. 153)* is **granted**; and

(4) Final judgment be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent